UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| COMMERCIAL CAPITAL, INC., | ) | Case No. 09-17238 MER |
| a Colorado corporation, | ) | Chapter 11 |
| EIN 20-2508479, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| CCI FUNDING I, LLC, | ) | Case No. 09-17437 MER |
| a Delaware Limited Liability Company, | ) | Chapter 11 |
| EIN 20-5982391, | ) | |
| | ) | **JOINTLY ADMINISTERED UNDER** |
| Debtor. | ) | **CASE NO. 09-17238 MER** |
| | ) | |

**ORDER (I) AUTHORIZING CCI FUNDING I, LLC (A) TO OBTAIN
POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105,
361, 362, 364(c)(1), 364(c)(2), 364(c)(3) AND 364(d)(1) AND (B) TO RETURN
CERTAIN CASH COLLATERAL TO WESTLB AG, NEW YORK BRANCH,
AND (II) GRANTING ADEQUATE PROTECTION TO WESTLB AG, NEW
YORK BRANCH PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364**

Upon the motion (the "Motion")of CCI Funding I, LLC ("CCIF," the "Borrower"

or the "Debtor") originally filed as a joint motion of CCIF and the Debtor Commercial

Capital, Inc. ("CCI"), as debtors and as debtors-in-possession herein, pursuant to

sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e)

of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"),

Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and the corresponding local rules of this District (the "Local

Rules"), seeking, among other things (a) authorization for CCIF to (x) obtain DIP Loans

(as hereinafter defined) in an aggregate principal amount to be determined by WestLB AG, New York Branch ("WestLB") but not to exceed $20,000,000, plus the amount of any unpaid interest on the DIP Loans and unreimbursed expenses and indemnities payable under the DIP Credit Agreement, and (y) execute and deliver the DIP Credit Agreement (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Credit Agreement") dated as of October ___, 2009, substantially in the form filed with this Court on October 8, 2009, between the Borrower and WestLB, as debtor in possession lender (in such capacity, the "DIP Lender"), and (b) the granting of adequate protection to the Prepetition Secured Party (as hereinafter defined) under that certain Credit and Security Agreement (as amended by Amendment Nos. 1, 2, 3, 4, 5 and 6, respectively, dated as of August 15, 2007, October 2, 2007, April 18, 2008, July 30, 2008, September 18, 2008 and March 18, 2008, respectively, to the Credit and Security Agreement, the "Prepetition Credit Agreement"), dated as of January 5, 2007, among CCIF, WestLB as Agent (in such capacity, the "Prepetition Agent"), WestLB as Lender (in such capacity, the "Prepetition Lender" and together with the Prepetition Agent, the "Prepetition Secured Party") and Wells Fargo Bank, National Association as Custodian, which is secured by liens and security interests that are being primed by the liens and security interests granted by the Borrower to secure the DIP Loans; and the hearing (the "October 6 Hearing") having been held by the Court on October 6, 2009 to consider the Motion; and the Court having considered the record filed with the Court, the testimony of Toni V. Meyer-Walker and Matt Witt and the statements of counsel at the October 6 Hearing; and it appearing to the Court that granting certain relief on the terms and conditions herein contained is

necessary and essential to enable the Borrower to continue to operate its business and preserve its properties; and good cause appearing therefor;

**THE COURT HEREBY FINDS, UPON THE RECORD OF THE PROCEEDINGS HELD BEFORE THIS COURT WITH RESPECT TO THE MOTION, AS FOLLOWS:**

A.      The Motion is granted on the terms set forth herein. Any objections to the relief requested by CCIF in the Motion that have not been previously resolved or withdrawn are overruled on the merits. This Order shall be valid, binding and enforceable on all parties in interest and fully effective immediately upon entry.

B.      This Court has core jurisdiction over the Debtor's chapter 11 case and the jointly administered case of CCI (the "Case"), the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and Bankruptcy Rules 4001(b), (c) and (d) and the Local Rules.

C.      The notice given by CCIF of the Motion constitutes appropriate, due and sufficient notice thereof and complies with sections 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 4001(b) and (c) and the Local Rules, and no further notice of the relief sought at the October 6 Hearing and the relief granted herein is necessary or required.

D.      Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 26 below), CCIF admits, stipulates and agrees that:

i.      On April 22, 2009, (the "CCI Petition Date"), CCI filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On April 24, 2009 (the "CCIF Petition Date", and together with the CCI Petition Date, the "Petition Dates"), CCIF filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Cases are being jointly administered pursuant to an Order of this Court entered April 30, 2009.

ii.      No trustee has been appointed for CCIF.  The Debtor continue to operate as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  CCIF is wholly owned by CCI.

iii.      Prior to the Petition Dates, CCI originated approximately 54 Mortgage Loans in respect of certain Mortgaged Properties (each as defined in the Prepetition Credit Agreement).  Pursuant to the Purchase Agreement (as defined in the Prepetition Credit Agreement), CCIF from time to time purchased from CCI such Mortgage Loans and certain other Purchased Assets (as defined in the Purchase Agreement).  CCIF did not purchase or assume, and CCI retained, all obligations under the Mortgage Loans to make additional advances to the mortgagors.  As of the CCI Petition Date, CCI had certain unfunded loan commitments under the Mortgage Loans (the "Unfunded CCI Commitments").

iv.      Prior to the Petition Dates, the Prepetition Lender made certain loans and advanced credit to CCIF, in order to fund CCIF's acquisition of the Mortgage Loans and the other Purchased Assets, pursuant to and in accordance with the terms and conditions of the Prepetition Credit Agreement, and certain other documents evidencing and securing the Prepetition Lenders' loans to CCIF (collectively, as amended, modified,

supplemented or restated from time to time prior to the Petition Dates, the "Prepetition Credit Documents").

     v.    As of the CCIF Petition Date, CCIF was justly and lawfully indebted to the Prepetition Secured Party under the Prepetition Credit Documents in the approximate aggregate principal amount of $150 million, together with accrued and unpaid interest, other contingent obligations and costs and expenses, including, without limitation, attorneys' fees, other professional fees and disbursements (collectively, the "Prepetition Indebtedness").

     vi.    Subject to paragraph 26 of this Order, the Prepetition Indebtedness constitutes the legal, valid and binding obligation of CCIF, enforceable in accordance with the terms of the Prepetition Credit Documents, provided, that CCIF and the Prepetition Secured Party reserve all of their respective rights, remedies and claims (other than claims by CCIF in respect of the legal, valid, binding and enforceable nature of the Prepetition Indebtedness) arising in respect of the Prepetition Credit Documents.

     vii.    Pursuant to the Prepetition Credit Documents, first priority liens and security interests were granted by CCIF to and for the benefit of the Prepetition Secured Party in and upon the following (collectively, the "Prepetition Collateral"): (i) all Mortgage Loans and other Purchased Assets purchased by CCIF under the Purchase Agreement, and all collateral related thereto, (ii) all payments in respect of interest and principal received, collected or otherwise recovered with respect to the related Mortgage Loans, Mortgaged Properties and other Purchased Assets (as defined in the Prepetition Credit Agreement) and all other proceeds received thereof, (iii) all documents required to be included in the related Mortgage Files and other Records (each as defined in the

Prepetition Credit Agreement), (iv) all guaranties, letters of credit, letter-of-credit rights, supporting obligations and other agreements or arrangements of whatever character from time to time supporting or securing payment of the Mortgage Loans whether pursuant to the documents required to be included in the related Mortgage Files or otherwise, (v) all insurance policies that relate to the Mortgage Loans, Mortgagor, Mortgaged Properties or Improvements (as defined in the Prepetition Credit Agreement) related thereto, (vi) the Purchase Agreement and all other Transaction Documents (each as defined in the Prepetition Credit Agreement) to which the Borrower is party, (vii) all other rights and payments relating to the Mortgage Loans, the Mortgaged Properties, the Purchased Assets and the other Prepetition Collateral, (viii) the Collection Account, the Reserve Account, the Interest Reserves (each as defined in the Prepetition Credit Agreement) and all other bank and similar accounts relating to collections on and proceeds of the Mortgage Loans and the Mortgaged Properties whether now existing or hereafter established and all cash, instruments, investment property, financial assets or other property that are held or required to be deposited in such accounts and all investments in and all income from the investment of funds in the Collection Account, the Reserve Account, the Interest Reserves and such other accounts and (ix) all proceeds of any of the foregoing including without limitation interest, dividends, cash, instruments and other property from time to time received, receivable or otherwise distributed in respect of or in exchange for or on account of the sale or other disposition of any or all of the then existing Prepetition Collateral.

E.　　An immediate need exists for CCIF to have access to the DIP Loans in order to maximize the value of its assets and assure the orderly administration of its estate.

F.　　CCIF will be unable to administer its estate and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. CCIF also is unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without CCIF granting to the DIP Lender the DIP Liens and the Superpriority Claims (as hereinafter defined).

G.　　Pursuant to the *Order Granting Partial Interim Authority to Use Cash Collateral* entered on September 4, 2009, and the *Second Order Granting Partial Interim Authority to Use Cash Collateral* entered on September 28, 2009, nunc pro tunc to September 11, 2009 (collectively, the "Cash Collateral Order"), the Court authorized the use of certain cash collateral of WestLB for the purpose of funding certain servicing fees, legal expenses and other costs related to the preservation of the value of the Mortgage Loans, subject to certain conditions, including but not limited to WestLB's right to request that, as further adequate protection for WestLB's security interest in the Cash Collateral (as defined in the Cash Collateral Order), in the event that CCIF and WestLB agree on a debtor in possession lending facility that is approved by an order of this Court, the advance of Cash Collateral pursuant to the Cash Collateral Order be treated as a post-petition debtor in possession loan under such facility for all purposes, including with respect to all protections and rights granted in connection with such debtor in possession loans.

H.     The DIP Lender is willing to make the DIP Loans available to the Borrower, solely upon the protections, terms and conditions provided for in this Order.

I.     Good, adequate and sufficient cause has been shown to justify entry of this Order.  Among other things, granting the relief set forth in this Order will permit the Borrower to fund advances on certain projects in order to maximize the value of certain Mortgage Loans (exclusive of the Mortgage Loans identified on <u>Exhibit B</u> hereto, the "<u>Subject Mortgage Loans</u>").  Thus, the Court concludes that permitting the Borrower to obtain the DIP Loans on the terms and conditions herein prescribed is vital to avoid immediate and irreparable harm to the Debtor's estate.

J.     The Court hereby finds that this Order and the terms of the DIP Loans have been negotiated in good faith and at arm's length between the Debtor and the Prepetition Secured Party, and any DIP Loans extended and other financial accommodations made to the Debtor by the DIP Lender pursuant to this Order shall have been extended by the DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections afforded by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

**NOW, THEREFORE UPON THE RECORD OF THE PROCEEDINGS HELD BEFORE THIS COURT WITH RESPECT TO THE MOTION, THE EVIDENCE ADDUCED AND THE STATEMENTS OF COUNSEL AT THE OCTOBER 6 HEARING, IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted to the extent set forth herein and any objections to the Motion that have not previously been withdrawn are hereby overruled. The Borrower is hereby authorized to execute, deliver and perform its obligations under the DIP Credit Agreement and all documents and agreements executed in connection therewith (the "DIP Loan Documents") and to borrow the DIP Loans solely and exclusively for the purposes of and to the extent set forth in the budget attached hereto as Exhibit A (as such budget may be modified from time to time only upon the prior written consent of the DIP Lender, the "Budget"), and for no other purposes.  The DIP Lender shall have no obligation to fund any of the Unfunded CCI Commitments in respect of any Mortgaged Property.  All disbursements made pursuant to the Cash Collateral Order are hereby deemed to constitute DIP Loans made pursuant to this Order and the DIP Credit Agreement for all purposes.

2.      In furtherance of the foregoing, and without further approval of this Court, the Debtor is authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents and to pay all fees that may be reasonably required or necessary for the Borrower's performance of its obligations under the DIP Loan Documents, including, without limitation:

(i)      the execution, delivery and performance by the Borrower of the DIP Loan Documents, including, without limitation, the DIP Credit Agreement, and the Budget substantially in the form filed with the Court prior to the October 6 Hearing, and marked as Exhibit 2 at the October 6 Hearing;

(ii)      the execution, delivery and performance by the Borrower of one or more amendments, waivers, consents or other modifications to and under the DIP

Loan Documents for the purpose of modifying the Budget, in each case in such form as the Borrower, the DIP Lender and the Prepetition Secured Party may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Loan Documents (and any fees paid in connection therewith) unless such amendments, waivers, consents or other modifications (A) shorten the Maturity Date (as defined in the DIP Credit Agreement) on terms and conditions other than those set forth in the DIP Credit Agreement, (B) increase the aggregate amounts to be borrowed under the DIP Credit Agreement or the rate of interest payable on the DIP Loans, or (C) change any Event of Default, add any covenants or amend the covenants therein in any such case to be materially more restrictive;

(iii)    the modification of the Budget to the extent and in the manner expressly permitted in the DIP Credit Agreement;

(iv)    the non-refundable payment to the DIP Lender of the fees referred to in the DIP Credit Agreement and such fees and costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the attorneys and other professionals retained by the DIP Lender (without the necessity for such professionals to file any fee application or any other application with the Court), all as provided for in the DIP Loan Documents and all of which constitute Obligations (as defined in the DIP Credit Agreement); and

(v)    the non-refundable repayment of all Obligations and the performance of all other acts necessary or required or, in the judgment of the DIP

Lender, desirable under or in connection with the DIP Loan Documents and this Order.

3. Upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents shall constitute valid and binding obligations of the Borrower, enforceable against the Borrower in accordance with the terms of the DIP Loan Documents. No obligation, payment, transfer or grant of security under the DIP Loan Documents or this Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

4. The loans and extensions of credit made pursuant to the DIP Credit Agreement (the "DIP Loans") shall be, as applicable, (a) disbursed by the DIP Lender into a DIP Funding Account (as defined below), in accordance with and for the purposes set forth in the succeeding paragraph, and (b) disbursed by the DIP Lender directly to pay certain Reimbursable Legal Fees and certain Unpaid Successor Servicer Amounts (each as defined below), in accordance with the second succeeding paragraph.

The DIP Lender shall from time to time disburse DIP Loans into a DIP funding account (the "DIP Funding Account") maintained by and in the name of TriMont Real Estate Advisors, Inc. ("TriMont"), as successor servicer to CCI (the "Successor Servicer"), for the benefit of, and in trust for, the Borrower. With respect to any DIP Loans disbursed by the DIP Lender into the DIP Funding Account, the Successor Servicer may, from time to time, make withdrawals from the DIP Funding Account: (1)

*first*, on a *pro rata* and *pari passu* basis, to reimburse the Successor Servicer (a) for all unreimbursed out-of-pocket fees, expenses and other expenditures which are reimbursable to the Successor Servicer in accordance with (i) the Appointment and Acceptance Agreement, dated as of April 15, 2009, as extended from time to time, and (ii) the Amended and Restated Servicing Agreement, dated as of August __, 2009 as modified by this Court's order dated October _____, 2009 (collectively, as amended, modified or restated from time to time, the "Servicing Agreement") between CCIF, the Prepetition Agent and the Successor Servicer (collectively, the "Servicing Expenses"), and (b) all unreimbursed Servicing Fees (as defined in the Servicing Agreement) that are payable to it pursuant to and at the times set forth in the Servicing Agreement (collectively, the "Servicing Fees"); (2) *second*, following the withdrawals set forth in clause (1) immediately above, to pay the to the Custodian (as defined in the Prepetition Credit Agreement) all unreimbursed Custodian Fees (as defined in the Prepetition Credit Agreement) payable to the Custodian, together with all other reasonable out-of-pocket costs, expenses and reimbursements due and owing to the Custodian, pursuant to the Prepetition Credit Agreement, in each case as set forth in a written monthly invoice provided by the Custodian to the Successor Servicer, the Prepetition Agent and CCIF, and approved by the Prepetition Secured Party and CCIF (collectively, the "Custodian Fees and Expenses"); and (3) *third*, following the withdrawals set forth in clauses (1) and (2) immediately above, for the following purposes (the order set forth below not constituting an order of priority for such withdrawals)[1]:

---

[1]   The DIP Lender may, at its sole election, also make a DIP Loan for a particular Reimbursable Legal Fee by depositing such amount in the DIP Funding Account and directing the Successor Servicer to make such payment, in lieu of directly disbursing such DIP Loan by directly making such payment.

(i)     to fund advances to certain Mortgagors necessary for the purpose of continuing certain construction with respect to the related Mortgaged Properties (exclusive of the Mortgaged Properties identified on Exhibit B hereto, the "Subject Mortgaged Properties") in accordance with the terms of the related Subject Mortgage Loan documents, in each case on an as needed basis and in accordance with the Budget (collectively, the "Subsequent Advances");

(ii)    to fund certain advances with respect to the Subject Mortgaged Properties for the purpose of completing certain construction or making certain necessary repairs, and for the purpose of preserving and maintaining the Subject Mortgaged Properties (including, without limitation, for the payment of taxes and insurance due and owing in respect of such Subject Mortgaged Properties), in each case on an as needed basis and in accordance with the Budget (collectively, the "Project Advances"); and

(iii)   to fund certain agreed upon non-legal expenses incurred in connection with the foreclosure and realization upon certain Subject Mortgaged Properties, in each case in accordance with the Budget (collectively, the "Non-Legal Asset Realization Advances").

The DIP Lender may directly disburse DIP Loans for the purpose of funding: (a) certain legal fees incurred (i) by counsel to the Borrower (Weinman and Associates, P.C.; and Otten, Johnson, Robinson, Neff & Ragonetti, P.C.) in connection with the orderly administration of the Debtor's case, and (ii) by counsel for the Borrower (including any special counsel engaged by the Borrower with the approval of the Bankruptcy Court) in connection with the foreclosure upon the Subject Mortgaged

Properties and other realization of the Subject Mortgage Loans (including, without limitation, deeds in lieu of foreclosure, sales of foreclosed subject Mortgage Properties, sales of the Subject Mortgage Loans and payoffs of the Subject Mortgage Loans), in each case in accordance with the Budget and as may be approved from time to time by the Bankruptcy Court (collectively, the "Reimbursable Legal Fees"); *provided, however*, that the DIP Lender shall pay all Reimbursable Legal Fees of counsel for the Borrower incurred through the date that is five (5) business days after the date that the DIP Lender provides written notice, by facsimile or email to counsel for the Borrower, that the DIP Lender will not disburse any further DIP Loans to pay the future fees and expenses of counsel for the Borrower; and (b) in the event the Successor Servicer has been terminated or removed or has resigned, all unpaid Servicing Fees and reimbursable servicing expenses (as accrued to the date of termination, resignation or removal, as the case may be, collectively, the "Unpaid Successor Servicer Amounts") due and owing to the Successor Servicer in accordance with the Servicing Agreement at the expiration of thirty (30) days from the date of such termination, resignation or removal, as applicable, upon receipt of a written invoice from the Successor Servicer setting forth such amounts, to the extent such amounts have not previously been paid from the DIP Funding Account or otherwise by or on behalf of CCIF.

   5.  All Subsequent Advances shall be disbursed from the DIP Funding Account by the Successor Servicer upon written notice to the Borrower, the DIP Lender and the Prepetition Secured Party. All Project Advances, Non-Legal Asset Realization Advances, Servicing Expenses, Servicing Fees and Custodian Fees and Expenses may be disbursed upon the written direction of the Successor Servicer with prior notice to the

Borrower, the DIP Lender and the Prepetition Secured Party detailing such expenses.  To the extent that a Subsequent Advance is made in respect of a Mortgaged Property, it shall reduce any CCI Unfunded Commitment applicable to such Mortgaged Property.

Subsequent Advances and Project Advances shall be (i) made pursuant to documents satisfactory to the Borrower, the DIP Lender and the Prepetition Secured Party, (ii) constitute a loan under the Subject Mortgage Loan documents entitled to the same priority of lien and claim as the Subject Mortgage Loan with respect to which such Subsequent Advance and/or Project Advance, as the case may be, was made, and (iii) due and payable on terms satisfactory to the Borrower, the DIP Lender and the Prepetition Secured Party (which shall include a release to be executed in favor of the DIP Lender and the Prepetition Secured Party for all claims, liabilities and causes of action arising prior to the date such Subsequent Advance and/or Project Advance, as the case may be, is made).

6.     The Custodian shall be directed and authorized, without further order of the Bankruptcy Court, to pay to the Prepetition Secured Party on the last business day of each month all funds on deposit in the Collection Account, the Reserve Account and the Project Disbursement Account (as defined in the Prepetition Credit Agreement), if any.  The Prepetition Secured Party shall apply those funds in permanent reduction of the Prepetition Indebtedness.

7.     Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the Borrower's obligations to repay the DIP Loans shall constitute allowed senior administrative expense claims (the "Superpriority Claims") against the Borrower with priority over any and all administrative expenses, diminution claims, adequate protection

claims (including all Adequate Protection Obligations) and all other claims against the Borrower, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and with priority over any and all administrative expenses or other claims, including, without limitation, those arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which Superpriority Claims shall be payable from and have recourse to all pre- and post-petition property of the Borrower, subject only to the payment of the Carve Out to the extent specifically provided for herein, provided that should this Debtor's Chapter 11 case herein be converted to a Chapter 7 case, WestLB's superpriority claims arising hereunder shall not have priority over the allowed administrative expenses incurred during the course of such Chapter 7 case, and provided further however that the Superpriority Claims given to the DIP Lender for the DIP Loans shall not be payable from the proceeds of the Avoidance Actions.[2]

        8.     For purposes hereof, the "Carve Out" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code; and (ii) in the event of the occurrence and during the continuance of a Termination Event (as defined below), the payment of allowed and unpaid professional fees and disbursements incurred by the Borrower and any statutory committee appointed in CCIF's bankruptcy case from and

---

[2] "Avoidance Actions" shall mean proceeds or property recovered in respect of any and all claims and causes of action under sections 502(d), 541, 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or relevant state law, and the proceeds thereof and property received thereby, whether by judgment, settlement or otherwise.

after a Termination Event, in each case to the extent approved by the Court, in aggregate amount not to exceed $25,000; provided that no portion of the Carve Out shall be utilized for the payment of professional fees and disbursements incurred in connection with initiating or prosecuting any (x) claims, causes of action, adversary proceedings or other litigation or any threatened litigation against the DIP Lender or the Prepetition Secured Party, including any challenge to (A) the amount, extent, priority, validity, perfection or enforcement of the indebtedness of the Borrower owing to the Prepetition Secured Party or the DIP Lender or (B) the collateral securing the Prepetition Credit Documents or the DIP Loans, or the perfection, priority or validity of the liens granted in favor of the Prepetition Secured Party or the DIP Lender with respect thereto.  Cash or other amounts on deposit in the DIP Funding Account shall not be subject to the Carve Out.

9.      In consideration for the DIP Lender agreeing to advance the DIP Loans, the Borrower shall pay the DIP Lender a facility fee equal to 1% of the aggregate principal amount of the DIP Loans actually funded, payable upon the Termination Date (as defined in the DIP Credit Agreement).

10.     As security for all of the Debtor's obligations under the DIP Loan Documents, the DIP Lender is hereby granted (effective upon the entry of this Order by the Court and without necessity of the execution by the Debtor of mortgages, security instruments or any other documents) the following security interests and liens (all such liens granted hereunder, collectively, the "DIP Liens"):

(a)      Pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected first priority senior security interests in and liens upon the Post-Petition Collateral (as hereinafter defined), that, on or as of the

Petition Dates, is not subject to valid, perfected and non-avoidable liens (collectively, "Unencumbered Property");

        (b)    Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected security interests in and liens upon the Post-Petition Collateral (other than the property that is subject to the existing liens and security interests that secure obligations under the Prepetition Credit Documents of the Borrower to the Prepetition Secured Party referred to in clause (c) below which shall be primed by the liens to be granted to the DIP Lender with respect to the DIP Loans as described in such clause) junior solely to the valid, perfected and unavoidable liens and security interests in existence on the Petition Date or to valid and unavoidable liens in existence on the Petition Dates that are perfected subsequent to the Petition Dates as permitted by section 546(b) of the Bankruptcy Code;

        (c)    Pursuant to section 364(d)(1) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected first priority, senior priming security interests in and liens upon the Post-Petition Collateral, that is subject to the existing liens and security interests presently securing the Prepetition Indebtedness.  Such security interests and liens shall be senior in all respects to any and all present and future liens and security interests, if any, in favor of the Prepetition Secured Party (but not to liens and security interests, if any, to which the liens of the Prepetition Secured Party are subject on the CCIF Petition Date or become subject subsequent to the CCIF Petition Date as permitted by Section 546(b) of the Bankruptcy Code) and any liens granted after the CCIF Petition Date to provide adequate protection to the Prepetition Secured Party as provided in paragraph 12 hereof, in each case subject only to the Carve Out.

11.     Except as expressly provided in paragraph 12, the DIP Liens granted to the DIP Lender to secure the DIP Loans, the Adequate Protection Liens (as defined below), the Superpriority Claims and the 507(b) Claims granted to the Prepetition Secured Party, as described in paragraph 12 hereof, with respect to the Debtor shall not be (a) subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtor and the Debtor's estate under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Dates including, without limitation, subject to and effective upon entry of a Final Order, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor or (b) subordinated to or made pari passu with any other lien, security interest or claim, whether under sections 363 or 364 of the Bankruptcy Code or otherwise.  Notwithstanding anything to the contrary herein, the liens granted to the DIP Lender shall not be construed to prime the pre-existing tax lien against real property asserted by Tarrant County, Texas.

12.     In addition to all existing security interests and liens granted to or for the benefit of the Prepetition Agent and the Prepetition Lender in and to the Prepetition Collateral, as adequate protection for, and to secure payment of an amount equal to the Collateral Diminution (as defined below), the Borrower hereby grants to the Prepetition Agent for the benefit of the Prepetition Secured Party the following:

(a)     The Prepetition Secured Party is hereby granted a replacement security interest and an additional security interest in and lien upon all the Prepetition Collateral and all of the Borrower's now owned and hereinafter-acquired real and personal property, assets and rights, of any kind or nature, wherever located, and the

proceeds, products, rents and profits thereof, whether arising from Section 552(b) of the Bankruptcy Code or otherwise, other than Avoidance Actions (all of such property, the "Post-Petition Collateral"), senior to any other security interest or liens, subject only to (i) the security interests and liens granted to the DIP Lender with respect to the DIP Loans as provided for in paragraph 10 of this Order; (ii) the Prepetition Agent's or other Prepetition Secured Party's security interest and liens existing as of the Petition Dates, (iii) valid, perfected and enforceable prepetition liens (if any) which are senior to the Prepetition Secured Party's liens or security interests as of the Petition Dates and (iv) the Carve Out (the "Adequate Protection Liens").  The Adequate Protection Liens shall not be (A) subject or subordinate to (x) any lien or security interest that is avoided and preserved for the benefit of the Debtor and the Debtor's estate under section 551 of the Bankruptcy Code or (y) any liens arising after the Petition Dates including, without limitation, subject to and effective upon entry of a Final Order, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor or (B) subordinated to or made pari passu with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise, except the security interests and liens granted to the DIP Lender with respect to the DIP Loans on the terms and conditions set forth in this Order;

(b)     The Prepetition Secured Party is hereby granted, subject to the Carve Out, an allowed superpriority claim for all claims arising under the Prepetition Credit Documents, as provided for in section 507(b) of the Bankruptcy Code, with priority in payment over any and all administrative expenses of the kinds specified or ordered under any provisions of the Bankruptcy Code, including sections 105, 326, 328,

330, 331, 503, 507(a), 726, 1113 or 1114 of the Bankruptcy Code (the "507(b) Claims"), provided however that should this Debtor's Chapter 11 case herein be converted to a Chapter 7 case, WestLB's superpriority claims arising hereunder shall not have priority over the allowed administrative expenses incurred during the course of such Chapter 7 case. The 507(b) Claims shall be junior only to the claims under section 364 of the Bankruptcy Code held by the DIP Lender in respect of the DIP Loans. The Prepetition Secured Party shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims granted hereunder or under the Prepetition Credit Documents unless and until the Debtor's obligations under the DIP Loans have indefeasibly been paid in cash in full;

(c)    The interest on the Prepetition Loans shall continue to accrue at the default rate as provided for in the Prepetition Credit Agreement; and

(d)    The Prepetition Secured Party shall be authorized to withdraw any and all funds on deposit in the Collection Account, Reserve Account and Project Disbursement Account (each as defined in the Prepetition Credit Agreement, collectively, the "Accounts") by directing the Custodian to so withdraw such funds, and to apply them to the Prepetition Indebtedness. The Custodian (as defined in the Prepetition Credit Agreement) is authorized to pay the proceeds of the Accounts to the Prepetition Agent, and to deduct all fees and expenses as it may be entitled to receive under the Prepetition Credit Documents from funds to be paid to the Prepetition Agent and apply the same to any outstanding fees and expenses owed to it.

13.    For purposes of this Order, the term "Collateral Diminution" shall mean an amount equal to the aggregate diminution of the value of the Prepetition

Collateral from and after the Petition Dates for any reason including, without limitation, depreciation, sale or loss, whether in accordance with the terms and conditions of this Order or otherwise, provided, however, that Collateral Diminution shall not include diminution of the value of the Prepetition Collateral resulting from the sale of Prepetition Collateral solely to the extent that the proceeds from such sale are paid to the Prepetition Lender in permanent reduction of the Prepetition Indebtedness.

14.     As additional adequate protection, the Prepetition Secured Party's unreimbursed prepetition fees and expenses shall be due and payable on the Termination Date.

15.     Without the necessity of the filing of financing statements, mortgages or other documents, this Order shall be sufficient evidence of the DIP Lender's and the Prepetition Secured Party's perfected liens and security interests in and to the Post-Petition Collateral, including with respect to the DIP Loans.  Notwithstanding the foregoing, CCIF is authorized and directed to execute such documents including, without limitation, mortgages, pledges and Uniform Commercial Code financing statements as may be reasonably required to provide further evidence of the perfection of the DIP Lender's and the Prepetition Secured Party's security interests and mortgages in the Post-Petition Collateral as provided herein, including in connection with the DIP Loans.  The failure of CCIF to execute any documentation relating to the enforceability, priority or perfection of the DIP Liens, the Adequate Protection Liens, or any other liens or security interests granted hereunder shall in no way affect the validity, perfection or priority of the DIP Liens or the Adequate Protection Liens.  If the DIP Lender or the Prepetition Secured Party, in their sole discretion, elect to file any financing statements,

trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise to confirm perfection of the DIP Liens and/or the Adequate Protection Liens, as applicable, the Debtor shall cooperate with and assist in such process, the stay imposed under section 362 of the Bankruptcy Code is hereby lifted to permit the filing and recording of a certified copy of this Order or any such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, and all such documents shall be deemed to have been filed and recorded at the time of and on the date of this Order.  Upon the request of the DIP Lender, without any further consent of any party, the Debtor is authorized to take, execute, deliver and file such instruments (in each case without representation or warranty of any kind) to enable the DIP Lender and the Prepetition Secured Party to further validate, perfect, preserve and enforce the DIP Liens, the Adequate Protection Liens, and any other liens or security interests granted hereunder as applicable. A certified copy of this Order may, in the discretion of the DIP Lender and the Prepetition Secured Party, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.  Any provision of any lease, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for the Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other Prepetition Collateral or Post-Petition Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the

transactions granting DIP Liens, the Adequate Protection Liens in such leasehold interest or the proceeds of any assignment and/or sale thereof by the Debtor in favor of the DIP Lender or the Prepetition Secured Party in accordance with the terms of this Order.

16.    CCIF hereby agrees that it shall provide the DIP Lender and the Successor Servicer full and complete access to reports and information as the DIP Lender and the Successor Servicer may reasonably and timely request.  The DIP Lender and the Successor Servicer shall have the right, during ordinary business hours, to inspect and copy the Debtor's books and records.

17.    The Borrower's ability to incur any DIP Loans shall expire (subject to any notice requirements as set forth below), on the earliest to occur of (each such occurrence being hereinafter referred to as a "Termination Event") (a) the sixth month anniversary of the entry of the Order (the "Expiration Date"); (b) the dismissal of the CCIF Case or the conversion of the CCIF Case to a case under Chapter 7 of the Bankruptcy Code; (c) the entry by the Court of an order or orders granting relief from the automatic stay imposed by Section 362 of the Bankruptcy Code to any entity or entities other than the DIP Lender or the Prepetition Secured Party with respect to assets or property having a present fair, salable value, in the aggregate, for all such orders, in excess of $100,000 without the DIP Lender's written consent; (d) the appointment in the CCIF Case of a trustee, examiner with expanded powers or any other representative with expanded powers; (e) the occurrence of the effective date or consummation date of a plan of reorganization for CCIF; (f) the failure of CCIF to make any payment required herein when due within five (5) days following written notice of such failure; (g) the failure by CCIF to deliver to the DIP Lender any of the documents or other information reasonably

required to be delivered pursuant to paragraph 15 hereof when due within five (5) days following written notice of such failure or any such documents or other documents shall contain a material misrepresentation; (h) the entry of an order of the Bankruptcy Court approving the terms of any debtor-in-possession financing for the Debtor other than with respect to the DIP Loans; and (i) entry of an order reversing, staying, vacating or otherwise modifying in any material respect the terms of this Order or any of the DIP Loan Documents.

18.     This Order and the transactions contemplated hereby shall be without prejudice to (i) the rights of the DIP Lender or the Prepetition Secured Party to seek different adequate protection, move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert the Case, or to take any other action in the Case and to appear and be heard in any matter raised in the Case, and (ii) any and all rights, remedies, claims and causes of action which the Prepetition Secured Party may have against any other party liable for the Prepetition Indebtedness.

19.     Except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including conversion of any one or more of the Cases to a case under chapter 7 of the Bankruptcy Code or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or the Post-Petition Collateral under section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender and the Prepetition Secured Party, and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Lender or the Prepetition Lender.

20.     The Debtor is authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be necessary to implement the terms and conditions of this Order and the transactions contemplated hereby.  The stay of Section 362 of the Bankruptcy Code is hereby modified solely to permit the parties to accomplish the transactions contemplated by this Order.

21.     The provisions of this Order shall be binding upon any trustee appointed in the CCIF chapter 11 Case, or upon a conversion to chapter 7 of the CCIF Case and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Debtor's chapter 11 Case to chapter 7, or dismissing CCIF's chapter 11 Case, or any order which may be entered confirming or consummating any plan(s) of reorganization, and the terms and provisions of this Order, as well as the priorities in payment, liens and security interests granted pursuant to this Order shall continue in this or any superseding case under the Bankruptcy Code, and the obligations of the Debtor under this Order shall not be discharged (and the Debtor waives its right to seek or obtain a discharge of such obligations pursuant to section 1141 of the Bankruptcy Code or otherwise) until the amount of the DIP Loans are indefeasibly paid in full in cash by the Borrower.  Any order entered dismissing this Case shall retain jurisdiction to allow the DIP Lender and the Prepetition Secured Party to fully exercise their respective remedies in respect of the DIP Loans and the Post-Petition Collateral securing the DIP Loans until the DIP Loans have been indefeasibly paid in full in cash by the Borrower.

22.     From and after the Petition Dates, no act committed or action taken by the DIP Lender or the Prepetition Secured Party in connection with enforcement of any right or remedy provided for under this Order or the Prepetition Credit Documents

shall be used or construed to hold the DIP Lender or the Prepetition Secured Party to be in control of or participating in the governance, management or operations of CCIF for any purpose, without limitation, or to constitute within the meaning of 42 U.S.C. § 9601(20)(F) actual participation in the management or operational affairs of a facility owned or operated by the Debtor, or to be acting as a "responsible person" or "owner or operator" or a person in "control" with respect to the governance, management or operation of the Debtor or its business (as such terms, or any similar terms, are used in the Internal Revenue Code, the Comprehensive Environmental Response, Compensation and Liability Act or the Bankruptcy Code, as each may be amended from time to time, or any other federal or state statute, at law, in equity or otherwise) by virtue of the interests, rights and remedies granted to or conferred upon the DIP Lender or the Prepetition Secured Party under this Order or the Prepetition Credit Documents, including, without limitation, such rights and remedies as may be exercisable by the DIP Lender or the Prepetition Secured Party in connection with this Order.

23.     The terms of this Order shall be valid and binding upon the Debtor, all creditors of the Debtor and all other parties in interest from and after the entry of this Order by this Court.  In the event this Court stays, modifies or vacates any of the provision of this Order following any further hearing, such modifications, stays or vacation shall not affect the rights and priorities of the Prepetition Secured Party granted pursuant to this Order.

24.     Notwithstanding any such stay, modification or vacation, any indebtedness, obligation or liability incurred by the Debtor in connection with the DIP Loans pursuant to this Order arising prior to the DIP Lenders and the Prepetition Secured

Party's receipt of notice of the effective date of such stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and the DIP Lender and the Prepetition Secured Party shall continue to be entitled to all of the rights, remedies, privileges and benefits, including any payments authorized herein and the security interests and liens granted herein, with respect to all such indebtedness, obligation or liability, and the validity of any payments made or obligations owed or credit extended or liens or security interests granted pursuant to this Order is and shall remain subject to the protection afforded under Section 364(e) of the Bankruptcy Code.

25.     The obligations of the Borrower to the DIP Lender under this Order and the rights of the DIP Lender under this Order shall, notwithstanding anything contained in any chapter 11 plan for the Debtor or in any order of this Court confirming any such chapter 11 plan, survive the confirmation and/or consummation of any such chapter 11 plan and remain operative and effective in accordance with the terms and provisions of this Order.  The priorities granted to the DIP Lender and the Prepetition Secured Party shall not be affected in any manner by the entry of an order confirming a plan of reorganization in this Case absent the consent of the DIP Lender and the Prepetition Secured Party, which consent may be given or withheld by the DIP Lender and the Prepetition Secured Party, respectively, in the exercise of their sole and absolute discretion.

26.     The stipulations, admissions and release contained in this Order, including, without limitation, those contained in paragraph D of this Order, shall be binding upon the Debtor and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) under all

circumstances and for all purposes and shall be binding upon all other parties in interest unless (a) any party in interest having standing has timely filed an adversary proceeding or contested matter (subject to the limitations contained in paragraph 27 of this Order) by no later than the date that is ninety (90) days after the entry of this Order, (i) challenging the validity, enforceability, allowability, priority or extent of the Prepetition Indebtedness or the Prepetition Secured Party's liens on the Prepetition Collateral or (ii) otherwise asserting any claims or causes of action against the Prepetition Secured Party on behalf of the Debtor's estate and (b) the Court rules in favor of such party in interest having standing in any such timely filed adversary proceeding or contested matter.  If no such adversary proceeding or contested matter is timely filed or the Court does not rule in favor of such party in interest having standing in any such proceeding, (w) the Debtor's admissions, stipulations and releases contained in paragraph D of this Order shall be binding on all parties in interest (x) the Prepetition Indebtedness shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in this Case and a subsequent case under chapter 7, (y) the Prepetition Secured Party's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Dates, legal, valid, binding and perfected first priority security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; and (z) the Prepetition Indebtedness, the Prepetition Secured Party liens on the Prepetition Collateral and the Prepetition Secured Party shall not be subject to any other or further claim or challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including, without limitation, any successor thereto (including, without limitation, any chapter 7 or 11 trustee or examiner appointed or elected for the Debtor),

and any claims, causes of action, defenses and setoffs, whether arising under the Bankruptcy Code or otherwise, against the Prepetition Secured Party and its affiliates, agents, officers, directors and employees, arising out of or relating to the Prepetition Documents shall be deemed waived and released. If any such adversary proceeding or contested matter is properly filed as of such dates, the Debtor's admissions, stipulations and releases contained in paragraph D of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such admissions and releases were expressly challenged in such adversary proceeding or contested matter. Nothing in this Order shall be construed as conferring standing on any party in interest to assert claims on behalf of the Debtor's estate.

27.     Notwithstanding anything herein or in any other order of this Court to the contrary, no borrowings, proceeds of Prepetition Collateral or Post-Petition Collateral or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount payable under the Prepetition Credit Documents, or the liens or claims granted under this Order or the Prepetition Credit Documents; or (b) assert any claims or defenses or causes of action against any of the DIP Lender or the Prepetition Secured Party or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay any of the DIP Lender's or the Prepetition Secured Party's assertion, enforcement or realization on the Prepetition Collateral or the Post-Petition Collateral in accordance with the DIP Loan Documents, the Prepetition Credit Documents or this Order, (d) seek to modify any of the rights granted to any of the DIP Lender or the Prepetition Secured Party hereunder or under the Prepetition Credit

Documents, in each of the foregoing cases without such parties' prior written consent, which may be given or withheld by such party in the exercise of its respective sole and absolute discretion or (e) pay any amount on account of any claims arising prior to the Petition Dates unless such payments are approved by an order of this Court.

28.     This Court shall retain jurisdiction to enforce the provisions of this Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtor notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

29.     Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of effectiveness of this Order as provided in such Rules.

30.     This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon entry hereof.

31.     The Debtor shall promptly mail copies of this Order to the parties having been given notice of the October 6 Hearing and to any other party that has filed a request for notices with this Court.

BY THE COURT:

Dated: October 21, 2009

Michael E. Romero
U.S. Bankruptcy Judge

31850957.DOC

**EXHIBIT A**

**BUDGET**

CCI Funding, LLP, Debtor in Possession
for Discussion Purposes Only
Year 2009

| Month | October Budget | November Budget | December Budget | Grand Total |
|---|---|---|---|---|
| Cash Collateral Balance (Shortfall) from amount due through 9/30/09 [1] | (377,351) | | | $ (377,351) |
| Transit Services Fee | 231,207 | 231,207 | 231,207 | $ 693,622 |
| Unused Out-of-Pocket | 7,500 | 7,500 | 7,500 | $ 22,500 |
| Wells Trustee Fee | 1,500 | 1,500 | 1,500 | $ 4,500 |
| **Property Related Expenses** | | | | |
| Forced Place Insurance | | | | |
| Delinquent Taxes and upcoming Taxes [2] | 223,250 | 225,125 | 225,125 | $ 673,499 |
| Property Preservation | 1,603,800 | - | 547,268 | $ 2,151,068 |
| [1] Assumes that all cash collateral will be used to pay fees incurred prior through September 30, 2009. | | | | |
| | | 150000 City of Golden is requiring and present cut | | |
| Security | 3,651 | 3,651 | 3,651 | $ 10,952 |
| Utilities/Other [3] | 153,408 | 3,405 | 3,405 | $ 160,214 |
| Professional Fees | 27,693 | 27,693 | 27,693 | $ 83,080 |
| **Costs of Collection:** | | | | |
| Foreclosure and other mortgage realization      budget missing | | | | |
| Title Updates | 46,283 | 46,283 | 46,283 | $ 138,849 |
| Asset Searches | 24,053 | 24,053 | 24,053 | $ 72,159 |
| | 11,917 | 11,917 | 11,917 | $ 35,750 |
| **Legal Fees and Expenses (Cases Administration)** | | | | |
| Case Administration - CCI Legal Counsel Fees (Weinman & Associates)      budget missing | | | | |
| Case Administration - CCI Legal Counsel Fees      budget missing | | | | |
| Other Potential Litigation      budget missing | | | | |
| Interest (LIBO plus 6 with 2% floor) | | | | $ |
| Facility Fee (1%) | | | | $ |
| Contingencies/Potential Expenditures | | | | $ |
| Monthly Total | $ 2,711,609 | $ 3,443,943 | $ 3,129,601 | $ 4,573,544 |
| **Total DIP Balance** | $ 2,711,609 | $ 3,443,943 | | 4,573,544 |

Footnotes:

[2] Includes delinquent tax cure amount as of 7/31/09 with 10% increase for fees potential penalties and interest assessed through actual cure date.

[3] Includes $150,000 in October for Gateway soil stabilization required by the city.

Reserve Balance as of 7/31/2009                                                $  1,463,389.47

Add'l  Interest posted as of 8/31/09:                          12.43

                                                              $       12.43            $           12.43

Less:  9/4/2009 Interim Authority to Use Cash Collateral                $     93,530.00
Less:  9/11/2009 Interim Authority to Use Cash Collateral (pending) [2]  $    216,456.82        309,986.82

                                    **Reserve Balance as of 9/22/09** [1]                    $  1,153,415.08

Footnote:
(1) Not inclusive of September interest expected to be posted to account by 9/30/09
(2) Amount approved per 9/11/09 hearing, actual disbursement pending receipt of executed order

**USD Amount**

Wells Back-up Servicer Fee + all expenses, & Wells Custodian Fee   $    115,377.86   Per Limited Objection (thru 9/30/09) filed 9/14/09 by Wells Fargo
Tremont Out of Pocket (all expenses)                               $     68,501.44   through 8/31/09
Tremont Servicer Fees (Total Outstanding)                          $  1,206,174.07   through 9/30/09
Force Place Insurance (September, bill date 10/6/09)               $     71,374.74
Title Updates (past due)                                           $     72,159.00

                      Total payables through 9/30/09               $  1,533,587.11

Reserve Account Balance 9/22/09                                    $  1,153,415.08
Collection Account 8/31/09                                         $      2,821.12

                                                                  $  1,156,236.20

**Cash Collateral Balance (Shortfall)**                           $   (377,350.91)  Remaining in account:

TRIMONT
REAL ESTATE ADVISORS

**Property Preservation: Stalled at a Standstill**

| CCI Loan No. | Loan | Most Recent Date of Inspection | Product Type | Foreclosure Date Scheduled | Liquid Principal Balance | Exterior Construction: Does it reach Ready? | Interior Construction: Does it reach Ready? | Estimated cost to complete Interior Construction? | Estimated cost to complete Exterior Construction? | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| 28 | Willowe | 8/12/2009 | Condo | 10/15/2009 - Lender has requested court approval to proceed with foreclosure (2nd Motion) | 5,730,301 | Yes | | | 28,000 | Construction on complex is stalled at the 50/30/20 phase. The borrower has engaged to oversee a $4 per cost to complete the property. The project is estimated to be 80% complete. Construction Consultant disagreed with the borrower's estimate and projects $1,015,000. |
| 22 | Cortez Ridge | 4/22/2009 | Single Family Home | 6/22/2009 | 6,768,457 | No | | | 1,015,000 | Construction consultant has been engaged to confirm Borrower's estimate. Construction is expected to be 80% complete. |
| 56 | Lot 7 | 8/21/2009 | Single Family Home | 8/21/2009 | 1,298,063 | No | | | 103,000 | Lender is requesting court-approved proceed with foreclosure (2nd Motion). Construction Consultant has been engaged to confirm Borrower's estimate. Construction is expected to be 80% complete. |
| 48, 49 & 50 | Upper Piru River | 9/21/2009 | Two Single Family Homes and Land | 9/21/2009 | 7,146,969 | No | | | 21,969 | Project is estimated to be 80% complete. Contractor has engaged and is expected to provide his report by October 8, 2009. |

**Property Preservation: Pending Qualification when Construction Completes**

| CCI Loan No. | Loan | Most Recent Date of Inspection | Product Type | Foreclosure Date Scheduled | Liquid Principal Balance | Exterior Construction: Does it reach Ready? | Interior Construction: Does it reach Ready? | Estimated cost to complete Interior Construction? | Estimated cost to complete Exterior Construction? | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| 53 | Parkway | 6/15/2009 | Land | 6/15/2009 | 9,162,204 | No | | | 150,000 | City of Golden is working with preservation due to cost of at the project or site with improvement to the site. Lender only projects road cost but there are two fees (bonus) in the process of being reviewed and qualified by a construction consultant. |

**Property Preservation: Project Abandoned / Borrower Uncooperative**

| CCI Loan No. | Loan | Most Recent Date of Inspection | Product Type | Foreclosure Date Scheduled | Liquid Principal Balance | Exterior Construction: Does it reach Ready? | Interior Construction: Does it reach Ready? | Estimated cost to complete Interior Construction? | Estimated cost to complete Exterior Construction? | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| 12 | EDG | 6/11/2009 | Condo Conversion | 11/5/2009 - Lender has requested court approval to proceed with foreclosure (1st Motion) | 3,502,410 | No | N/A | | Unknown | Project is estimated to be 30% complete and cost to complete is estimated at $1.1MM. Unpaid cost only projects road cost but there... |
| 29 & 30 | Ponderosa | 6/16/2009 | Land | 6/16/2009 | 4,561,856 | No | N/A | | Unknown | Project is estimated to be 70% complete. Borrower has been requested to provide cost estimated to complete the project. |
| 47 | The Villas at Lakecliff | 7/15/2009 | Land | 7/15/2009 | 9,919,902 | No | N/A | | Unknown | Project is estimated to be 90% complete. Borrower has been requested to provide cost required to complete the project. |
| 47, 52, 53, 54 & 55 | Fall River Village | 7/26/2009 | Condo/Combined | 7/26/2009 | 12,040,966 | Unknown | N/A | | Unknown | Project is estimated to be 90% complete. Borrower has been requested to provide cost required to complete the project. |
| 51 | Gibson University | 9/10/2009 | Road | 9/10/2009 | 69,913,923 | No | N/A | | Unknown | Amounts are requested from the borrower; however, two buildings are 90% complete and 1 building is 15% complete and significant construction/easement to secure building 2. Local mini contractor has commenced rating building 3 that it its current condition. |

**No Property Preservation: Completed or Under Construction**

| CCI Loan No. | Loan | Most Recent Date of Inspection | Product Type | Foreclosure Date Scheduled | Liquid Principal Balance | Exterior Construction: Does it reach Ready? | Interior Construction: Does it reach Ready? | Estimated cost to complete Interior Construction? | Estimated cost to complete Exterior Construction? | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Cypress Plaza | 9/01/2008 | Center | 8/22/2009 - Lender has requested court approval to proceed with foreclosure (1st Motion) | 3,602,155 | Yes | Yes | N/A | N/A | N/A |
| 5 | Vic Meadow | 7/6/2009 | Center | 10/22/2009 - Lender has requested court approval to proceed with foreclosure (1st Motion) | 6,410,912 | Yes | Yes | N/A | N/A | N/A |
| 7 | Vanda Gardens | 6/19/2009 | Multi-family | Lender is requesting court approval proceed with foreclosure (2nd Motion) | 3,760,147 | Yes | Yes | N/A | N/A | N/A |
| 8 | CV Tower | 6/16/2009 | Multi-family | | 2,757,594 | Yes | Yes | N/A | N/A | N/A |
| 11 | Babcock Claire | 9/9/2009 | Single Family Home | Asset in REO | 651,711 | Yes | Yes | N/A | N/A | N/A |
| 14 | Babcock Ft. Worth | 5/2009 | Single Family Home | Asset in REO | 1,498,663 | Yes | Yes | N/A | N/A | N/A |
| 34 | Elkins | 9/01/2009 | Office | Asset in REO | 1,535,301 | Yes | Yes | N/A | N/A | N/A |
| 32 & 75 | CV Land | 6/01/2009 | Office | | 6,011,304 | Yes | Yes | N/A | N/A | N/A |
| 56, 71 & 35 | Tioxo | 8/19/2009 | Sierra Listing Condo | Lender is requesting court-approved proceed with foreclosure (1st Motion) | 3,432,570 | Yes | Yes | N/A | N/A | N/A |
| 32 | CRX | 6/15/2009 | Office | Lender has requested court approval to proceed with foreclosure (1st Motion) | 3,332,130 | Yes | Yes | N/A | N/A | N/A |
| 46 | Oceana Village | 7/6/2009 | Single Family Home | Lender has requested court approval to proceed with foreclosure (1st Motion) | 3,093,894 | Yes | Yes | N/A | N/A | N/A |
| 57 | Elk River | 6/19/2009 | Road | Lender is requesting court-approved proceed with foreclosure (1st Motion) | 6,449,936 | Yes | Yes | N/A | N/A | N/A |
| 58 | Babcock Alton | 6/26/2009 | Apartments and Land | Lender is requesting court approved proceed with foreclosure (2nd Motion) | 1,823,570 | Yes | Yes | N/A | N/A | N/A |
| 62 | Babcock Alton | 10/5/2009 | | | 2,038,147 | Yes | Yes | N/A | N/A | N/A |
| 63 | AXES | 8/27/2009 | Mini Storage | Lender is redirecting court-approved proceed with foreclosure (1st Motion) | 4,035,680 | Yes | Yes | N/A | N/A | N/A |
| 64 | Oasis Yuppo | 9/27/2009 | Mini Storage | Lender is redirecting court-approved proceed with foreclosure (2nd Motion) | 3,966,530 | Yes | Yes | N/A | N/A | N/A |

**EXHIBIT B**

| Name of Property | Address of Property | Name of Borrower | Amount of Original Loan | Unpaid Principal Balance | CCI Loan Number |
|---|---|---|---|---|---|
| Grayson Place | 301 Harrison Street, Denver, CO 80206 | Harrison Place, LLC | $8,124,416 | $5,667,159 | Loan No. 1 |
| Monroe Place | 566 Monroe Place, Denver, CO 80206 | Monroe Place LLC | $4,299,064 | $4,439,912 | Loan No. 5 |
| Sandia Shadows | 2901 Euclid Avenue NE, Albuquerque, NM 87106 | Sandia Shadows - MH, LLC | $5,760,183 | $5,760,183 | Loan no. 7 |
| Babcock Plano | 2900 E. Parker Road, Plano, TX 75074 | Jim Babcock | $911,705 | $921,213 | Loan no. 11 |
| Babcock Fort Worth | 1007 Brae Ct., Fort Worth, TX 76111 | Jim Babcock | $1,479,568 | $1,496,658 | Loan no. 13 |
| Skyrocket Creek Townhomes | 1231 Main Street, Ouray, CO 81427 | Marilyn J. Sloan | $1,847,237 | $1,851,305 | Loan no. 14 |